UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MALLORY ADDINGTON, ET AL. | CIVIL ACTION NO. 18-1116 LEAD |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| BAYOU DORCHEAT CORRECTIONAL CENTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a second motion for summary judgment, filed by the Defendant, Dr. Frederick Heard ("Dr. Heard") [Record Document 109]. This matter arises from the custodial death of Joshua Addington ("Addington") from diabetic complications while he was incarcerated at Bayou Dorcheat Correctional Center ("BDCC"). Plaintiffs Mallory, Landon, and Cody Addington (collectively, "Plaintiffs") filed this suit on behalf of Addington, their father, alleging that his death resulted from violations of the Eighth Amendment of the United States Constitution and Louisiana law. The motion has been fully briefed. For the reasons enumerated below, Defendant's motion [Record Document 109] is **GRANTED**.

**I.   Background**

The Court provided an extensive background section in its first memorandum ruling. *See* Record Document 105 at 1-7. As such, this background section will be condensed to include only the facts directly relevant to Dr. Heard's motion for summary judgment.

Addington was booked into BDCC on Saturday, March 17, 2018. Record Document 58 at ¶ 8. Upon intake, a correctional deputy performed Addington's health screening where

1

Addington reported having Type II diabetes. *Id.* at ¶¶ 9-10. Defendant claims that Addington reported no history of "medical problems or hospitalizations."[1] Record Document 109-3 at 4. He also avers that Addington signed a form confirming receipt of an inmate handbook, which outlined the proper procedure for submitting an inmate medical evaluation form. *Id.*

Debra Claunch ("Claunch") was the only licensed nurse employed at BDCC. Webster Parish Sheriff Gary Sexton ("Sheriff Sexton") contracted with the Louisiana State University Health Sciences Center at Shreveport ("LSUHSC-S") for the provision of medical services by doctors in the Department of Family Medicine and Comprehensive Care.[2] Record Document 109-4 at 2. Specifically, LSUHSC-S was to provide telephone consultations and health clinics. *Id.* During those clinics, doctors were responsible for: conducting health assessments; responding to sick calls; attending to medical emergencies; reviewing charts; updating and reviewing policies; providing training for medical staff; and referring inmates that required additional care. *Id* at 2-3. The contract states that the clinical schedule was to be determined by Sheriff Webster and LSUHSC-S. *Id.* at 2. Dr. Heard provided weekly clinical care at BDCC, though he reported that he was sometimes contacted

---

[1] As the Court discussed in its previous ruling, Addington's medical records make clear that he had an extensive history of hospitalizations for hypoglycemic and hyperglycemic episodes from uncontrolled diabetes. *See* Record Document 105 at 3 n.11.

[2] The Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College entered into the contract "for and on behalf of" LSUHSC-S. Record Document 109-4 at 2. The contract was signed by G.E. Ghali, DDS, M.D., Chancellor and Dean of LSUHSC-S and Michael B. Harmer, M.D., Professor and Chairman of the Department of Family Medicine and Comprehensive Care. *Id.* at 8.

2

by BDCC to inform him that the clinic would not be required that week. Record Document 109-6 at 26:25-28:2.

According to Defendant, a diabetic inmate at BDCC must approach the Key Room to notify the Key Officer when he requires blood glucose testing equipment and/or insulin shots. Record Document 80-1 at 10. The inmate is then given access to blood glucose testing equipment in the Key Room or the nurse's station. *Id.* If insulin is required, a correctional deputy will escort the inmate to the nurse's station, where "pre-prepared insulin doses" are kept for self-administration. *Id.* The escorting correctional deputy then radios the Key Room and Master Control with the blood glucose reading and information regarding the self-administration of the insulin shot. Record Document 80-23 at 39:17-40:20. The Key Officer and the officer in Master Control typically document the information in the Key Log Book and Master Control Log Book, respectively. *Id.* at 40:21-41:4.

On March 21, 2018, Addington suffered a mild hypoglycemic event and was provided a diabetic snack to raise his blood glucose levels. Record Document 109-3 at 5. On March 22, 2018, Addington submitted an Inmate Medical Evaluation Request form to request a nightly diabetic snack, which was approved by Nurse Claunch the next day. *Id.* Defendant claims that this was the only request for medical treatment that Addington submitted. *Id.* Further, there is no record that Addington filed any grievances through the administrative remedy process ("ARP"). *Id.* On Friday, March 30, 2018, correctional deputies found Addington passed out in his cell after a low blood glucose reading. Record Document 58 at ¶ 23. Addington was transported to Minden Medical Center ("MMC") where he was treated for hypoglycemia and chest pain. Record Document 109-3 at 5.

3

Upon his return from MMC, Addington was transferred to a holding cell for medical observation. Record Documents 58 at ¶ 30 and 109-3 at 5. A few hours after returning to BDCC, Addington recorded an elevated blood glucose reading and a fever. Record Document 58 at ¶ 33. Over the next forty-eight hours, Plaintiffs claim that Addington continued to receive high blood glucose readings and experienced other symptoms. Record Document 58 at ¶¶ 35-48. At approximately 1:20 p.m. on April 1, 2018, a correctional deputy found Addington unresponsive. Record Documents 58 at ¶ 49 and 109-3 at 6. Despite attempts at resuscitation, Addington was pronounced dead shortly thereafter. Record Documents 58 at ¶ 50 and 109-3 at 6. Addington's autopsy report listed his cause of death as acute renal failure due to diabetic ketoacidosis complicating hypertensive cardiovascular disease. Record Documents 109-3 at 6; and 113 at 7. Dr. Heard avers that although he was available for a phone consultation, he had no knowledge of and was never contacted about Addington. Record Document 109 at ¶¶ 5-7. This suit followed.

Previously, the Court granted in part and denied in part a motion for summary judgment filed by Sheriff Sexton, Claunch, Sergeant Wells ("Wells"), and Warden John Lewis ("Warden Lewis") (collectively, "the BDCC Defendants"). Record Document 105 at 28. The Court denied the BDCC Defendants' motion as to Plaintiffs' Eighth Amendment and Louisiana state law claims against Wells relating to the care Addington did or did not receive after his discharge from MMC. *Id.* In doing so, the Court also denied Wells's assertion of qualified immunity. *Id.* at 19. Moreover, the Court denied summary judgment on Plaintiffs' Louisiana law vicarious liability claim against Sheriff Sexton in his official capacity. *Id.* at 28.

Wells appealed the Court's denial of qualified and discretionary immunity. *See Addington v. Wells*, No. 22-30220, 2023 WL 2808466, at \*1 (5th Cir. Apr. 6, 2023). The Fifth Circuit reversed the Court's denial of qualified immunity because it found that Addington failed to meet his burden "of placing 'beyond debate' the question of whether an officer acting under similar circumstances would have been on notice that he was violating clearly established law." *Id.* at \*5 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). It also reversed the Court's denial of summary judgment on Plaintiffs' negligence claims, finding that it could not be determined that "Wells's actions (or lack thereof) rose to the level of intention, malice, willfulness, or recklessness that would place him under the intentional misconduct exception to section 9:2798.1's immunity provisions." *Id.* at \*7.

Turning now to the allegations against Dr. Heard, Plaintiffs claim that Dr. Heard violated Addington's Eighth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983") by failing to: 1) construct policies governing the intake process of chronically ill inmates; 2) enforce policies related to medication administration and related records (known as medication administration records or "MAR"); and 3) visit Addington or review his medical records after his arrival at BDCC. Plaintiffs also bring a negligence claim against Dr. Heard pursuant to Louisiana Civil Code Articles 2315.1 and 2315.2. Dr. Heard filed a motion for summary judgment, contending that Plaintiffs are unable to show that his actions constitute deliberate indifference or negligence. Record Document 109-3 at 3, 17. He also asserts qualified immunity. *Id.* at 3.


## II. Law and Analysis

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant

is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

    **b. Section 1983 Claims**

        i. <u>Section 1983</u>

Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

First, Dr. Heard argues that he was not a state actor acting under color of law because Sheriff Sexton contracted with LSUHSC-S for the provision of medical services and did not contract with or for him specifically. However, as the Supreme Court noted in *West v.*

7

*Atkins*, "[i]t is the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law." 487 U.S. 42, 56 (1988). Considering the Supreme Court's holding, the Court finds that at the time of Addington's passing, Dr. Heard was a state actor providing medical services under color of state law. This is because Sheriff Sexton must provide medical care to inmates incarcerated at BDCC, *see Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (holding that inmates must have adequate access to medical care while incarcerated), and that responsibility was then delegated to Dr. Heard via his employment with LSUHSC-S. The Court will now turn to Plaintiffs' claims that Dr. Heard deprived Addington of his protections under the Eighth Amendment.

1. *Eighth Amendment Claims*

As previously mentioned, Plaintiffs claim that Dr. Heard violated Addington's constitutional rights by failing to: 1) create a specific process or policy for the intake of chronically ill inmates; 2) abide by and enforce policies relating to the administration of medication and the MAR; and 3) visit Addington or review his medical records after his arrival at BDCC.

The Eighth Amendment requires that prison officials "provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates." *Gates*, 376 F.3d at 332. In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983" because it

8

"constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S. 97, 104-05 (1976) (internal quotation marks and citation omitted). A prison official acts with deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to prevail on an Eighth Amendment claim, a plaintiff must demonstrate (1) that "the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities" and (2) that the prison official "possessed a subjectively culpable state of mind in that he exhibited deliberate indifference to serious medical needs." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (internal quotation marks and citations omitted).

"Deliberate indifference is an extremely high standard to meet." *Id.* (citation omitted). "A prison official displays deliberate indifference only if he (1) 'knows that inmates face a substantial risk of serious bodily harm' and (2) 'disregards that risk by failing to take reasonable measures to abate it.'" *Id*. (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). An obvious risk could be sufficient to allow a fact finder to conclude that prison officials knew of the risk. *Hinojosa v. Livingston*, 807 F.3d 657, 667 (5th Cir. 2015) (citing *Gates*, 376 F.3d at 340); *see Farmer*, 511 U.S. at 842; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

"Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment,

9

absent exceptional circumstances." *Arenas*, 922 F.3d at 620 (internal quotation marks and citations omitted). "Rather, an inmate must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 620-21 (internal quotation marks and citations omitted).

The Court will address each of Plaintiffs' Eighth Amendment claims in turn.

### a. Failing to Create Policy

Plaintiffs aver that Dr. Heard acted with deliberate indifference by failing to create a specific policy governing the intake process for the chronically ill. Record Document 58 at ¶ 54. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequence of not adopting a policy will be a deprivation of constitutional rights." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted). Importantly, the Fifth Circuit has held that "the existence of a constitutionally deficient policy [or] [practice] cannot be inferred from a single wrongful act," unless the policy itself violates the constitution. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

In his motion, Defendant argues that Plaintiffs cannot meet their burden because "there is no evidence to suggest the current policy or intake practice at BDCC was deficient and certainly, no evidence that Dr. Heard had any reason to believe it was deficient." Record Document 109-3 at 15. The Court agrees. Plaintiffs failed to enunciate a single process required by the current intake policy that is deficient; provide information about any additional instances in which the current intake policy put chronically ill inmates at substantial risk of harm; or demonstrate that the current policy has resulted in a failure to

10

provide medical services to inmates who are chronically ill. In fact, Plaintiffs neglected to address this issue in their opposition. Plaintiffs have failed to meet their burden; accordingly, Defendant's motion is **GRANTED** with respect to this claim.

b. Administration of Medication and Documentation

Plaintiffs aver that Dr. Heard acted with deliberate indifference by failing to enforce a BDCC policy governing the administration of medication and its documentation in the MAR. Record Document 58 at ¶¶ 64-65. To this end, Plaintiffs argue that there are two ways in which Dr. Heard acted with deliberate indifference.

First, Plaintiffs argue that Dr. Heard violated this policy by requiring Addington to self-administer blood glucose tests and insulin. Record Document 58 at ¶ 67. Plaintiffs contend that not only does this violate BDCC policy, but also "goes against state and local policies which state all medications are to be given as ordered." Record Document 113 at 14. In response, Dr. Heard argues that he was never informed of Addington's incarceration at BDCC and had no personal involvement in the decision that Addington must self-administer his blood glucose tests and insulin shots. Record Document 109-3 at 10.

Plaintiffs did not explain why they believe assigning Addington this responsibility was in direct contravention of BDCC policy; they have further failed to enumerate which local and state policies this practice violated.[3] The Court directly addressed this issue in its

---

[3] Plaintiffs argue that a statement from a supplemental expert report filed by Dr. Timothy Hughes, M.D. ("Dr. Hughes") supports their assertion that requiring an inmate to self-administer blood glucose tests and insulin is in violation of local and state law. Record Document 113 at 14 n.32 (citing Record Document 113-20 at 5). Defendant objects to the admission of Dr. Hughes's unsworn report [Record Document 113-13] and supplemental report [Record Document 113-20] under Federal Rule of Civil Procedure 56(c)(2), arguing

first ruling, where Plaintiffs brought the same claim and raised the same arguments against Claunch.[4] As this Court explained in its prior ruling:

> Plaintiffs take issue with BDCC requiring Addington "to seek out his medication himself instead of having BDCC staff bring it to him." Record Document 89 at 14. However, merely disagreeing with "a treatment regimen is not sufficient to establish a claim of deliberate indifference." *Banks v. LeBlanc*, No. CV 16-649-JWD-EWD, 2019 WL 4315018, at *4-5 (M.D. La. Aug. 27, 2019), *report and recommendation adopted*, No. CV 16-649-JWD-EWD, 2019 WL 4307873 (M.D. La. Sept. 11, 2019); *Gobert*, 463 F.3d at 346. Placing the burden on an inmate to manage his diabetes and self-administer insulin injections is a matter of medical discretion and does not constitute deliberate indifference absent evidence that staff knew of and ignored an inmate's inability to do so. *See Banks*, 2019 WL 4315018, at *5; *Gobert*, 463 F.3d at 346; *Baughman v. Seale*, 761 F. App'x 371, 379-80 (5th Cir. 2019). Here, prior to his hospitalization on March 30, 2018, there is no evidence that Addington was incapable of seeking out his medication, nor is there evidence that Addington requested for insulin to be brought to him because of an infirmity.
>
> Plaintiffs also maintain that requiring Addington to request his insulin medication violates jail policies. However, this statement mischaracterizes BDCC policy. BDCC's policy states that "[m]edications will be administered according to doctor's instructions only" and that officers should ensure "offenders receive their medications according to doctor's instructions."

---

that these reports are "hearsay, not competent summary judgment evidence, and cannot be presented in a form that would be admissible in evidence." Record Document 117 at 1-2. The Court previously sustained the BDCC Defendants' nearly identical objection to Plaintiffs' inclusion of and reliance on these same two expert reports in its first memorandum ruling, finding that these reports were not presented in an admissible form. *See* Record Document 105. Plaintiffs took no steps to remedy these admissibility issues. For the same reasons articulated therein, Dr. Heard's objection is **SUSTAINED**, and the Court will not consider these reports in its ruling.

[4] Plaintiffs devote a substantial portion of their opposition to arguments addressed in the Court's prior ruling. The Court issued its memorandum ruling on March 31, 2022. Plaintiffs filed their opposition to Dr. Heard's motion for summary judgment on May 11, 2023, nearly six weeks after that ruling was issued. Plaintiffs had the benefit of the Court's prior ruling and analysis in drafting their opposition to the foregoing motion for summary judgment. Despite this, Plaintiffs raise nearly identical arguments and cite to the same documents in their opposition. As such, the Court questions whether Plaintiffs read or considered the Court's prior findings in drafting their opposition.

> Record Document 89-7 at 2-3. These generic statements of policy in no way force officers to provide insulin at pill call instead of requiring an inmate to go to the nurse's station to self-administer insulin shots. Even if Defendants violated a policy, Fifth Circuit case law is clear that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute [deliberate indifference], if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).
>
> Ultimately, Plaintiffs have failed to come forward with any evidence that shows Addington did not have constant access to blood-glucose testing equipment and his insulin shots upon request prior to March 30, 2018. Plaintiffs' "disagreement with the ways in which insulin [was] [provided] to" Addington does not support a finding of deliberate indifference. *Banks*, 2019 WL 43150185, at *5; *see Gobert*, 463 F.3d at 346.

Record Document 105 at 14-16. Plaintiffs do not present any new evidence or legal argument that would suggest that the Court should reconsider its previous ruling or come to a different finding as applied to Dr. Heard. Plaintiffs also fail to address Defendant's assertion that he was never informed of Addington's incarceration at BDCC, was never called for consultation about Addington's diabetes complications, and was unaware that Addington had been treated at MMC. In summary, Plaintiffs failed their burden at summary judgment to prove that Dr. Heard was deliberately indifferent by allowing a patient with diabetes, and specifically Addington, to self-administer blood glucose tests or insulin injections.

Second, Plaintiffs assert that Dr. Heard failed to enforce BDCC policy by allowing inconsistent and inadequate MARs. Record Document 58 at ¶ 66. Specifically, Plaintiffs argue that the policy itself is deficient because it does not provide instructions for where the deputies should be documenting the medication administration, "lead[ing] to extreme confusion . . . [and] leaving room for significant error." *Id.* Plaintiffs contend that this

confusion resulted in Addington missing four of his morning and ten of his evening doses of insulin. *Id.* Dr. Heard admits that there are inconsistencies in the maintenance of the MAR, but argues that this record keeping had no impact on Addington's access to insulin and blood sugar testing devices. Record Document 109-3. In other words, the policy's adequacy and the correctional deputies' documentation had no bearing on whether Addington requested to test his blood sugar and administer insulin because he was free to request access to these devices as needed.

With respect to an identical claim made against Claunch, the Court previously found that "[t]he fact that Addington's MAR was not properly filled out played no role in Addington's access to glucose testing equipment or his insulin injection." Record Document 105 at 14. The Court finds no reason to depart from that holding because Plaintiffs have failed to advance any additional evidence or arguments explaining why the Court should rule differently with respect to Plaintiffs' claim against Dr. Heard.

The Court finds that Plaintiffs have failed to meet their burden at summary judgment and Defendant's motion is **GRANTED** with respect to this claim.

c. Failing to Visit Addington or Review His Records

Finally, Plaintiffs claim that Dr. Heard showed deliberate indifference towards Addington by failing to visit him or review his records. Record Document 58 at ¶ 51. Plaintiffs claim that Dr. Heard "ignored" his clinical schedule, and as a result, was not able to provide Addington the medical attention he required. Record Document 113 at 12. Dr. Heard represents that he did not know of Addington's incarceration at BDCC: he was never called about Addington's incarceration; he never examined Addington; and was never

notified of an inmate with diabetes arriving at BDCC during the relevant period. Record Document 109-3 at 10.

As previously mentioned, to establish deliberate indifference, a plaintiff must first show that the prison official *knew* the inmate faced a substantial risk of serious bodily harm, the subjective element of the analysis. *Arenas*, 922 F.3d at 620. Here, Plaintiffs failed to refute Dr. Heard's claim that he did not know of Addington's incarceration at BDCC. The only argument they raise is that Dr. Heard did not attend his clinicals as scheduled. The contract between LSUHSC-S and Sheriff Sexton did not require that Dr. Heard conduct weekly clinicals. It only required that clinicals be offered by an LSUHSC-S doctor and that an LSUHSC-S doctor be available for telephone consultations in between sessions. There is no evidence that Addington requested to be seen by a physician, no evidence that BDCC contacted LSUHSC-S for a phone consultation, and no evidence that the care Addington received would have been materially different if he was seen by Dr. Heard. Furthermore, there is also no evidence that Dr. Heard was asked to visit BDCC but refused, that Dr. Heard refused a call from BDCC, or that Dr. Heard was provided with Addington's records but failed to review them. In fact, Plaintiffs do not provide any evidence in support of their assertion that Dr. Heard's failure to attend his scheduled clinicals at BDCC or review his charts constitutes deliberate indifference.

The Court finds that Plaintiffs have failed to meet their burden at summary judgment. Defendant's motion is **GRANTED** with respect to this claim. The Court does not need to address qualified immunity because Plaintiffs have failed to establish any of their Eight Amendment claims.

### III. Louisiana State Law Claim

Defendant seeks summary judgment on Plaintiffs' Louisiana state law negligence claim against Dr. Heard. Record Document 109-3 at 16. Plaintiffs did not oppose summary judgment on this issue. "Prison authorities owe a duty of reasonable care to protect inmates from harm" and "to provide inmates with reasonable medical care." *Harper v. Goodwin*, No. 41,053-CA (La. App. 2 Cir. 5/17/06); 930 So. 2d 1160, 1163. Louisiana negligence claims are governed by a duty risk analysis under Louisiana Civil Code Article 2315, which requires the plaintiff to prove the following:

> (1) the conduct in question was the cause-in-fact of the resulting harm;
> (2) defendant owed a duty of care to plaintiff;
> (3) the requisite duty was breached by the defendant;
> (4) the risk of harm was within the scope of protection afforded by the duty breached.

*Stroik v. Ponseti*, No. 96-C-2897 (La. 9/9/97); 699 So. 2d 1072, 1077; *see Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (stating a fifth element: actual damages) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, No. 2005-CC-1095 (La. 3/10/06); 923 So. 2d 627, 633). A plaintiff must prove every element, "including medical causation, by a preponderance of the evidence." *Hutchinson v. Shah*, No. 94-CA-0264 (La. App. 1 Cir. 12/22/94); 648 So. 2d 451, 452, *writ denied sub nom.*, *Hutchinson v. Shan*, No. 95-C-0541 (La. 4/21/95); 653 So. 2d 570; *see Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219, 229-30 (5th Cir. 2012) (citing *Mathieu v. Imperial Toy Corp.*, No. 94-C-0952 (La. 1/30/94); 646 So. 2d 318, 322).

Cause in fact can be determined using a but for inquiry. *Faucheaux v. Terrebonne Consol. Gov't*, No. 92-C-0930 (La. 2/22/93); 615 So. 2d 289, 292. "[I]f the plaintiff

16

probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause-in-fact. To the extent that the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met." *Id*. In other words, "the inquiry is [d]id the defendant contribute to the plaintiff's harm or is the defendant a cause of the plaintiff's harm?" *Roberts v. Benoit*, No. 91-C-0394 (La. 9/9/91); 605 So. 2d 1032, 1042 (internal quotation marks and citation omitted).

Alternatively, the "substantial factor" test can be employed to determine cause in fact if multiple causes emerge. *Id.* (citation omitted). Under the substantial factor test, "cause in fact is found to exist when the defendant's conduct was a 'substantial factor' in bringing about plaintiff's harm." *Id.* A court need not consider "whether the defendant's actions were lawful, unlawful, intentional, unintentional, negligent or non-negligent. Rather, the cause in fact inquiry is a neutral one, free of the entanglements of policy considerations—morality, culpability or responsibility—involved in the duty-risk analysis." *Id*. (citation omitted).

In his motion, Dr. Heard addresses only the first element, arguing that Plaintiffs are unable to prove that his absence from BDCC was a substantial factor in Addington's death. Record Document 109-3 at 17. This is because 1) Addington was not forthright about the severity of his diabetes; 2) Addington had the ability to test his own blood glucose and administer insulin shots; 3) Addington could request medical attention; 4) LSUHSC-S doctors were available for consultation; and 5) there is no indication that Dr. Heard could have provided better care than the doctors at MMC. *Id.* As the Court previously mentioned, Plaintiffs did not file any opposition on this issue, so there is no competing evidence or argument to refute Defendant's claims. Plaintiffs did not advance any evidence that Dr.

17

Heard could have prevented Addington's death, that BDCC requested any assistance from LSUHSC-S, or that Dr. Heard's absence was the cause in fact of Addington's death. In short, Dr. Heard met his burden at summary judgment. Accordingly, Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' state law negligence claim against Dr. Heard is **DISMISSED WITH PREJUDICE**.[5]

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment [Record Document 109] is **GRANTED** and Plaintiffs' claims against Dr. Heard are hereby **DISMISSED WITH PREJUDICE**. A judgment will be issued alongside this ruling.

**THUS DONE AND SIGNED** this 18th day of September, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[5] Sheriff Sexton filed a motion for entry of judgment seeking dismissal of the state law vicarious liability claim against him. Record Document 121 at ¶ 1. Plaintiffs did not oppose the motion. Pursuant to Louisiana Civil Code Article 2320, ". . . employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. "The sheriff, in his official capacity, is the proper party to sue for the torts of his employees." *See Grafton v. Bailey*, No. 13-CV-2940, 2018 WL 2325410, at *13 (W.D. La. May 22, 2018) (citing La. R.S. § 42:1441.3(E); *Jenkins v. Jefferson Par. Sheriff's Off.*, No. 80-C-1794 (La. 6/22/1981); 402 So. 2d 669, 669). Because the Court has dismissed all remaining claims by Plaintiffs, there are no claims for which Sheriff Sexton could be held liable. Accordingly, Sheriff Sexton's motion is **GRANTED** and Plaintiffs' state law vicarious liability claim is **DISMISSED WITH PREJUDICE**.